BOARD OF MANAGERS OF the GLEN MILLS SCHOOLS, Terrill Gilette, on behalf of himself and all others similarly situated, Plaintiffs,

v.

WEST CHESTER AREAS SCHOOL DISTRICT, also known as West Chester Area Joint School Authority, Thomas J. Kent, George Zumbano, Harold Zuber, Donald Howland, Thornbury Township, Pennsylvania, Mary Beth Graap, Theodore Russell, George Morley, Defendants.

Civ. A. No. 92–3407.

United States District Court, E.D. Pennsylvania.

Dec. 6, 1993.

Guy Vilim,. Gold & Vilim, Philadelphia, PA, for plaintiffs.

Jeffrey H. Quinn, Duffy and Quinn, Philadelphia, D. Barry Gibbons, Gibbons, Buckley, Smith, Palmer & Proud, P.C., Robert P. Anderman, Media, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

I am called upon to decide: 1) whether the plaintiff, a private school for boys adjudicated delinquent by the courts, has offered sufficient evidence of racial animus to· survive summary judgment on its claims under the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3) where plaintiff has offered sufficient evidence of unequal treatment but has offered no evidence of racial motivation apart from the fact that the majority of the plaintiff's students are· black or latino, and 2) whether the plaintiff has offered sufficient evidence of arbitrary and capricious government action to survive summary judgment on its substantive due process claim. I find that the plaintiff has failed to offer sufficient evidence of racial animus to survive summary judgment on its claims under the Fourteenth Amendment, 42 U.S.C. § 1981 and 42 U.S.C. § 1985(3), but that it has offered sufficient evidence of arbitrary and capricious government action to survive summary·judgment on its substantive due process claim.

On June 11, 1992, plaintiff, the Board of Managers of the Glen Mills School ("Glen Mills"), a private school for boys who have committed delinquent acts, filed a six count complaint against the West Chester Area School District, individual school board members,[1] Thornbury Township, and several past and present Township supervisors.[2] After a partial settlement, the remaining counts allege denial of equal protection, violation of substantive due process rights, violation of contract rights protected by 42 U.S.C.

---

1. The term "the School District" will be used in this opinion to include the individual Board members and Superintendent: Howland, Zumbano, and Kent. As plaintiff does not contest that Harold Zuber was not a member of the Board during the two years preceding the filing of this complaint, and does not allege any basis for his liability other than his acts as a Board member, the complaint will be dismissed as to him pursuant to the relevant statute of limitations.

2. "The Township", as used in this opinion, will include the individual defendants Theodore Russell, George Morley and Mary Beth Graap.

§ 1981, and a conspiracy to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3).[3]

The School District and Township defendants each moved for summary judgment on all outstanding counts of the complaint. Those motions are now before me.

### FACTS

Plaintiff is the Board of Managers or governing body of the Glen Mills Schools ("Glen Mills"), a school for boys who have committed delinquent acts. Dep. of Mitzi Hepps at 11. Glen Mills is located in Thornbury Township, Delaware County, Pennsylvania, within the West Chester Area School District.

This lawsuit involves a building and tract of land ("the Thornbury School") adjacent to the Glen Mills School and currently owned by the West Chester Area School District. Glen Mills originally sold the land to the School District in 1904, but retained a reversionary interest should the School District cease to use it as a school. Plaintiff's Ex. C (Deed dated June 24, 1904). In 1962 Glen Mills gave up that reversionary interest in connection with a subsequent sale of land. Plaintiff's Ex. D (1962 Deed). The School District subsequently granted Glen Mills a right of first refusal should the School District ever decide to sell the property. Plaintiff's Ex. E (letter dated April 17, 1963 from the School District to Glen Mills, confirming the right of first refusal).

The School District constructed a building on the property and used it as a public elementary school until the late nineteen seventies. Dep. of Donald Howland at 12–13. During that time, the school also served as a community center for the citizens of Thornbury Township. Dep. of George Morley at 12–14. Each of the Township supervisors who participated in the acts which are the subject of this lawsuit had children who had attended the Thornbury School and had fond memories of the school, and some had expressed an interest in bringing the school "back into the Township". Morley Dep. at 21; Dep. of Theodore Russell at 41.

In early 1988 there was an incident which shocked the residents of Thornbury Township and hurt Glen Mills' relationship with the surrounding community. A Glen Mills student left the school without permission and was discovered undressing in a young girl's bedroom nearby. Russell Dep. at 59. A number of residents approached the Township supervisors "in an uproar" and demanded that they do something to insure the residents' safety. Russell Dep. at 59–60. This led to meetings between the supervisors and Glen Mills and the establishment of a liaison between the Township and the school.[4] Russell Dep. at 59.

Beginning in 1981, the School District leased the Thornbury School building to Glen Mills for additional classroom space for the sum of $1.00 per year. Plaintiff's Ex. I (Lease). The original lease, which was for a term of five years, was renewed for another five-year term, but the School District retained the right to terminate the lease, with six months notice to Glen Mills, at the end of any year. Plaintiff's Ex. K (Addendum to Lease). Glen Mills continued to occupy the school until July, 1991. Dep. of Cosimo Ferrianola at 145. Glen Mills made several offers to purchase the building during this time, but the School District showed no interest. Plaintiff's Ex. Q (December 1987 offer to purchase the property for $750,000 payable over 10 years); Plaintiff's Ex. W (April 1988 offer to purchase the property for $750,000, or $1 million over the next five years or to make an exchange for a 16 acre piece of property owned by Glen Mills).

In October 1987, the Township wrote to the School District, expressing an interest in purchasing the property and requesting a meeting to discuss that possibility. Howland Dep. Ex. 10. The Township sent another

---

**3.** This court denied plaintiff's petition for certification of a class of students, and plaintiff does not now pursue any claim on behalf of individual students.

**4.** Two of the Township supervisors named as defendants took office in January 1988—shortly before the incident involving the AWOL student and around the time, Glen Mills contends, that its troubles with the Township and the School District began.

letter in March 1988, confirming its interest in the property. Plaintiff's Ex. S. The exact course of the negotiations between the School District and the Township is unknown; Township officials characterize their interest in the building as short-lived, and state that the Township never formally decided to purchase the building. Dep. of Mary Beth Graap at 6; Russell Dep. at 74. Defendant Howland, the Director of Business Affairs for the School District, has testified that he has no recollection of the Township expressing any interest in purchasing the building until after the deal with Glen Mills fell through in 1991. Howland Dep. at 101–03. Nonetheless, in the spring of 1989 the lawyers for the parties exchanged a "final" agreement which involved the exchange of the Glen Mills School for a piece of property owned by the Township. Plaintiff's Ex. U (Letter dated May 25, 1989 from lawyer for Township to lawyer for School District, describing attached agreement as "final" and communicating Township's intention to sign the agreement by June 5, 1989). Glen Mills was not offered a right of first refusal, nor told of the negotiations. Hepps Dep. at 22–23.

The School District and the Township apparently anticipated an effort by Glen Mills to assert a right of first refusal. The agreement includes a nine-page addendum which details the steps each party would take in the event that Glen Mills asserted such a right, including denying the existence of the right and sharing the costs of defending a law suit by Glen Mills. Plaintiff's Ex. U at ¶ 3. According to the addendum to the agreement, if necessary the Township would acquire the property by eminent domain and the School District would reimburse the Township for any costs it incurred over the value of the property. Plaintiff's Ex. U at ¶ 4.

In May of 1989 when Glen Mills learned that the Township planned to buy the property, it immediately wrote to the School District to assert its right of first refusal. Plaintiff's Ex. Z. The sale to the Township was

not consummated, nor were there negotiations with Glen Mills at this time.[5]

In early 1991, Glen Mills and the School District commenced negotiations for the sale of the Thornbury School to Glen Mills. WCASD Ex. K (Series of letters between School District and Glen Mills, discussing terms of sale). The parties quickly agreed on a price of $550,000. WCASD Ex. K. That agreement subsequently broke down over the parties' inability to agree on an environmental inspection clause. The original agreement proposed by the School District made no provision for environmental inspection by Glen Mills. Plaintiff's Ex. E–1 ¶¶ 4–5 (Draft Agreement of Sale of Thornbury School property from School District to Glen Mills). Glen Mills asked for an addendum requiring the School District to prepare an environmental audit, allowing Glen Mills to perform environmental testing at the School District's expense, and providing Glen Mills with the right to terminate the agreement if it was unsatisfied with the results. Plaintiff's Ex. F–1 ¶ 2(d)–(e) (Facsimile letter from lawyer for Glen Mills to lawyer for School District). The School District countered with a proposal that would allow Glen Mills to conduct a visual inspection of the property at its own expense, reasoning that Glen Mills did not require any more in depth inspection since it had occupied the property for ten years. Plaintiff's Ex. G–1 (Facsimile response by lawyer for School District).

In its negotiations with other potential buyers of the property, both before and after the negotiations with Glen Mills, the School District has accepted the environmental testing clause it refused to include in the proposed agreement with Glen Mills; in those instances, however, the School District insisted that the testing be done at the buyer's expense. Plaintiff's ex. U at ¶ 2(c), (d) (spring 1989 agreement with Thornbury Township); Plaintiff's ex. I–1 (May 1992 letter to Walden School authorizing perc test of soil); cf. Plaintiff's ex. J–1 at ¶ 5 (clause in

---

**5.** The School District states that it negotiated with Glen Mills for the sale of the property during 1989, but the exhibit which they refer to as evidence of these negotiations is a March 1989 letter from the *Township's* lawyer to Defendants

Howland and Zumbano referring to the "Exchange of Property with Thornbury Township". Defendants, WCASD, et al., Motion for Summary Judgment at 4, WCASD ex. I.

sale agreement with the Devereaux Foundation, requiring buyer to obtain School District's written consent before performing such tests). Glen Mills claims that the negotiations broke down over the School District's insistence on a solely visual environmental inspection, while the School District states that the impasse resulted from Glen Mills' insistence that the School District pay for the environmental testing. Howland Dep. at 110–12.

Glen Mills vacated the Thornbury School at the end of the last lease term in 1991 and thereafter had to find substitute classroom space where it could—in basements, the school's library, the vocational training facility, and other rooms it claims were unsuitable for that use. Hepps Dep. at 49. Glen Mills then made plans to build new classroom space on its own land, but encountered delays and additional expense in the form of allegedly excessive, unwarranted and unprecedented demands for plans, reports, and documentation by the Township. In particular, the Township refused to issue a building permit because Glen Mills had not submitted a master plan of the campus, including all proposed future construction as well as a diagram of the existing sewer and water lines, electrical service, roads, and stormwater run-off systems for the entire 800–acre campus. Russell Dep. at 99–103; Morley Dep. at 74; Dep. of Daniel Lutz at 43–45. Township officials characterized this requirement as standard, but also testified that the only other projects for which such a plan had been required were developments involving multiple buildings, such as large housing developments. Morley Dep. at 77. The Township had not required a master plan from Glen Mills before approving the plans for a 22–lot staff housing development and a dormitory which were submitted less than a year before the plan for the academic building. Lutz Dep. at 37.[6]

Glen Mills' interpretation of these events is that the School District refused to bargain with it in good faith for the sale of the school because the School District did not want Glen

Mills' predominantly black and latino student population to grow. Glen Mills alleges that the same motivation prompted the Township to conspire with the School District to arrange a secret sale of the Thornbury School to the Township, to prevent the building from falling into Glen Mills' hands, and to further stymie Glen Mills' growth by interfering with the construction of new classroom space. These assertions are vehemently denied by the Township and the School District.

## DISCUSSION

To succeed on a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552. In deciding whether the standards for summary judgment have been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Invest.,* 951 F.2d 1399, 1404 (3d Cir.1991).

Initially, defendants challenge Glen Mill's standing to allege discriminatory treatment on the basis of race, arguing that Glen Mills, as a private organization, cannot assert a Fourteenth Amendment claim on behalf of its students, and that, as a corporation, Glen Mills cannot sue on its own behalf under the Fourteenth Amendment.

Glen Mills does not, at this stage, assert any claims on behalf of its students, but seeks redress for losses it claims to have suffered because of its association with black and latino students. Thus, it alleges the type of "demonstrable, particularized injury"

---

**6.** After settlement discussions before United States Magistrate Judge Smith, in early 1993, the Township approved a plan which was nearly identical to that submitted by Glen Mills in 1991: a general sketch of the entire property along with a detailed plan for the area affected by the proposed building. Lutz Dep. at 49.

needed to establish individual standing. *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). This claim is no less valid because brought under the Fourteenth Amendment and federal civil rights statutes. A corporation is a "person" entitled to the protections of the Fourteenth Amendment. *Hudson Valley Freedom Theater, Inc. v. Heimbach,* 671 F.2d 702, 706 n. 4 (2d Cir.), *cert. denied,* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). A "person" need not be a member of a protected class to sue under the Fourteenth Amendment or federal civil rights statutes if its complaint is that it was treated differently because of its association with members of a protected class. *Novotny v. Great American Savings and Loan Assoc.,* 584 F.2d 1235, 1244–45 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Scott v. Greenville County,* 716 F.2d 1409, 1415 (4th Cir.1983); *Hudson Valley Freedom Theater,* 671 F.2d at 706.

With the exception of its claim for denial of substantive due process, the claims of Glen Mills rely on the contention that the defendants acted out of racial animus toward Glen Mills' students. I will address the question of racial motivation first, since it is dispositive of those claims for which it is at issue.

## I. The Existence of Racial Animus

Glen Mills' claims arising under 42 U.S.C. § 1983 for denial of equal protection, 42 U.S.C. § 1981[7], and 42 U.S.C. § 1985(3)[8] require it to demonstrate the existence of a racially discriminatory intent on the part of the defendants. *See Village of Arlington*

Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (Fourteenth Amendment); *General Building Contractors Assoc., Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (42 U.S.C. § 1981); *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (42 U.S.C. § 1985(3)).

Because direct evidence of discriminatory intent is extremely rare, the Supreme Court has set out frameworks for evaluating indirect evidence of discrimination. Each of Glen Mills' claims falls under a different constitutional or statutory provision and requires application of a different framework.

■ When evaluating indirect evidence of discrimination in equal protection cases under § 1983[9], the court must consider the entire context of the allegedly discriminatory actions, focussing on the factors enumerated by the Supreme Court in *Village of Arlington Heights. Arlington Heights,* 429 U.S. at 267, 97 S.Ct. at 564. The court must consider whether the defendants' actions impacted more heavily on one race than another, the historical background of those actions, the sequence of events which led up to the challenged actions, any departures by the defendants from normal procedures or disregard for factors normally considered important, and statements made by decision-makers. *Arlington Heights,* 429 U.S. at 267–269, 97 S.Ct. at 564–66.

■ In asserting a claim under 42 U.S.C. § 1981, however, a plaintiff seeking to rely upon indirect evidence of discrimination

---

**7.** 42 U.S.C. § 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**8.** 42 U.S.C. § 1985(3) provides, in pertinent part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or

class of person of the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators.

**9.** Glen Mills has also brought its substantive due process claim under § 1983. That claim is analytically distinct and is discussed separately, below.

must follow the three-step procedure articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, a § 1981 plaintiff must first establish a *prima facie* case of discrimination by showing that 1) it is a member of, or associated with, a racial minority; 2) it attempted to contract, or sought "the benefit of [the] laws ... enjoyed by white citizens"; 3) it was qualified to do so; and 4) the contract or benefit was still available after the plaintiff was turned away. *See Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 127 (3d Cir.1990). Once the *prima facie* case is established, the defendant must respond with a legitimate, nondiscriminatory reason for its actions. *Id.* When the defendant has satisfied that requirement, the burden shifts back to the plaintiff to prove that the defendant's reason is a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Chauhan*, 897 F.2d at 127.

Prior to *Hicks*, this Circuit required a § 1981 plaintiff proceeding under the *McDonnell Douglas* and *Burdine* framework to demonstrate only that the defendant's proffered reasons for the alleged discriminatory act were pretextual, and not that the true motive was discrimination. *Chauhan*, 897 F.2d at 128–29. The Supreme Court, however, held in *Hicks* that a Title VII plaintiff proceeding under that framework must prove both pretext *and* discriminatory intent. *Hicks*, — U.S. at —, 113 S.Ct. at 2749. In *Hicks*, the Supreme Court agreed with the trial judge's decision that, while the plaintiff had established the existence of a campaign to terminate him, he had neither presented evidence nor raised an inference that the defendants' motivation was racial animus. *Hicks*, — U.S. at — – —, 113 S.Ct. at 2747–48. The Court went on to explain that, while it is permissible for the district judge to infer discriminatory intent from the facts of the *prima facie* case and the plaintiff's refutation of the defendant's explanation, that inference is not compelled. *Id.*

While neither the Supreme Court nor the Third Circuit has addressed the issue of whether the same burden should apply in § 1981 cases, both courts have previously acknowledged that the *McDonnell Douglas* and *Burdine* framework is used identically in Title VII and § 1981 cases. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989); *Chauhan*, 897 F.2d at 126. Since, according to the Supreme Court, *Hicks* was a clarification, not a modification, of *Burdine*, logic compels the application of the holding of *Hicks* to § 1981 cases. *See Hicks*, — U.S. at — – —, 113 S.Ct. at 2750–56 (Court's discussion of why its holding in *Hicks* comports with *Burdine*). I will therefore follow the lead of the Seventh Circuit and Judge Reed of this District in applying *Hicks* to § 1981 claims. *See Pilditch v. Board of Education of the City of Chicago*, 3 F.3d 1113, 1116 (7th Cir.1993); *Caldwell v. Frances Nurses Directory*, No. 92–4834, 1993 WL 409163, at *5 (E.D.Pa. Oct. 8, 1993).

 Yet a third framework applies to the use of indirect evidence to establish discriminatory intent under a conspiracy claim pursuant to 42 U.S.C. § 1985(3). The Supreme Court recently stated in *Bray v. Alexandria Women's Health Clinic*, — U.S. —, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), that § 1985(3) requires proof that the defendants acted because of the plaintiff's membership in (or association with) the suspect class, not because of those class members' participation in an activity of which the defendants disapprove. *Bray*, — U.S. at —, 113 S.Ct. at 759.

As these frameworks and the claims they encompass are analytically distinct, I will address each of Glen Mills' claims of racially motivated treatment separately.

### A. Proof of Racial Animus In Glen Mills' Equal Protection Claim under 42 U.S.C. § 1983

 Glen Mills has not presented sufficient evidence of racial animus to survive summary judgment on its equal protection claims brought under 42 U.S.C. § 1983. Glen Mills has no direct, "smoking gun" evi-

dence of discriminatory intent or racial animus on the part of the defendants: no racial slurs or stereotypical characterizations about the students, no different treatment of a similarly situated but white group of delinquent boys. Ferrianola Dep. at 73–74, 92.

Nor has Glen Mills submitted enough indirect evidence to establish racial animus under the *Arlington Heights* framework. Because Glen Mills' student body is predominantly black and latino, any actions which affect the school necessarily impact more heavily on one race than on another. The history of the interaction between the School District and Glen Mills, however, does not support a finding of discriminatory motive. Glen Mills has not submitted evidence of any statements made by School District officials against Glen Mills students, except statements by two School District officials to the effect that they did not believe the School District had an obligation to educate Glen Mills' students if Glen Mills was unable to do so because of lack of space. Ferrianola Dep. at 56–57. Furthermore, the School District allowed Glen Mills to use the Thornbury School essentially rent-free for ten years, and there is no contention that the racial composition of the school changed during that time.

The School District did reject several offers by Glen Mills to buy the property, and instead pursued a land exchange with the Township which was arguably less profitable, thus disregarding the financial incentives which would ordinarily have a high priority in such a decision. However, there is no evidence of the relative values of the offers, and at least one School District official stated that Glen Mills' initial offers were absurdly low. Ferrianola Dep. at 59–60. Furthermore, these events occurred at a time when Glen Mills' relationship to the surrounding community had been severely damaged by the incident of the AWOL student, and at a time when the new Township supervisors had expressed an interest in regaining Township control of the Thornbury School. When the School District did negotiate with Glen Mills regarding the Thornbury School property,

the deal fell apart over a relatively minor provision, in whole or in part because the School District would not allow Glen Mills to inspect the property, as other potential buyers were allowed to do.

None of these events lead to an inference that these actions were taken on account of the race of Glen Mills' students. There are many non-discriminatory reasons why the School District may have preferred to sell the Thornbury School to the Township, including the local residents' reaction to the incident with the AWOL student and the Township supervisors' nostalgic attachment to the Thornbury School, the sincerity of which is not challenged by Glen Mills. The statements by School District officials that it was not responsible for the education of Glen Mills' students, when taken in context, do not reflect racist attitudes, but an appropriate concern about the School District's ability to deal with these students, who were sent to Glen Mills because they needed a more specialized program than the public schools or the juvenile court system could provide.

An examination of the *Arlington Heights* factors also precludes a finding that the Township delayed the issuance of Glen Mills' building permit because of the race of the students. Glen Mills has shown no history of discrimination or harassment by the Township or racial slurs by Township supervisors. This is not an instance in which the Township ignored its own interests in order to oppose Glen Mills. In fact, the Township claimed that such a plan would help it to plan for emergency services, though the absence of the same requirement for other construction projects undercuts this reasoning. Finally, the Township, as the entity to which the residents brought their fears and complaints about Glen Mills students, had the clearest non-racial reasons to be concerned with the school's growth.[10]

In the face of the evidence that the defendants had other than racial motivations for their actions toward Glen Mills, I cannot infer the existence of racial animus, particularly given the complete absence of any direct evidence that those actions were due to

---

**10.** There has been no evidence that the uproar over the AWOL student was a result of his race, or that of his school mates, rather than his status as a delinquent.

the race of Glen Mills' students. Whether the defendants' actions were open-minded or reasonable is not the issue; there simply is not enough evidence to draw an inference of racial animus from these events.

### B. Proof of Racial Animus under § 1981

 Glen Mills has made out a *prima facie* case of discrimination against the School District as required by *McDonnell Douglas* and *Chauhan* by submitting sufficient evidence to establish 1) that it is associated with a group of minority students; 2) that it attempted to purchase the Thornbury School[11]; 3) that it was qualified to do so; and 4) that the property remained unsold afterward.

The School District has also met its burden under *Burdine* and *Chauhan* of articulating a legitimate, non-discriminatory reason for its failure to sell the property to Glen Mills: the parties' failure to agree on an environmental inspection provision and where the cost of that inspection was to fall. In order to survive summary judgment, Glen Mills' evidence must raise a genuine issue of fact both as to the truth of that reason, and as to whether the true reason for the action was discrimination on the basis of race.

Glen Mills has proffered evidence of the School District's negotiations with other potential buyers of the property—before and after the negotiations with Glen Mills—which allow for exactly the sort of environmental testing which the School District refused to allow Glen Mills to conduct, though only at the buyer's expense. The School District argues that it thought the limited inspection clause appropriate because Glen Mills had occupied the property for the last ten years. Plaintiff's Ex. G–1. Glen Mills claims that the negotiations broke down over the School District's insistence on a solely visual environmental inspection, while the School District states that the impasse resulted from Glen Mills' insistence that the School District pay for the environmental testing. Howland Dep. at 110–12. Whether the impasse truly resulted from the School Districts' imposition of different inspection terms or from Glen Mills' insistence that the District pay for the inspection is a genuine issue of fact which cannot be resolved at the summary judgment stage.

Glen Mills has thus succeeded in raising a genuine question of fact as to the truthfulness of the School District's explanation, but that is not sufficient under *Hicks*. Glen Mills has proffered no evidence to suggest that the School District was motivated by racial animus, rather than some other concern. In the absence of evidence of other motivations for the School Districts' actions, I could draw an inference that the true reason for its refusal to deal with Glen Mills was racial animus, but in this case there is no such void. Under such circumstances, I cannot find that Glen Mills has presented enough evidence of racial animus to survive summary judgment.[12]

---

11. The fact that it was Glen Mills that finally walked away from the deal with the School District does not negate this, since Glen Mills has proffered sufficient evidence to enable a jury to find that the terms offered by the School District were different than those offered other *potential* purchasers.

12. Glen Mills also argues that the School District's breach of Glen Mills' contractual right of first refusal was racially motivated, in violation of § 1981. Because I find that Glen Mills cannot establish the requisite racial motivation, I need not resolve whether that claim is actionable under § 1981, or whether Glen Mills ever had an enforceable right of first refusal. The claim does not fall under the scope of the phrase "to make and enforce contracts", as articulated by the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 177, 109 S.Ct. 2363, 2373,

105 L.Ed.2d 132 (1989), but would be actionable under the amendment to § 1981 enacted through the Civil Rights Act of 1991, which provides that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship". 42 U.S.C. § 1981(b). That section became effective after the alleged breach, but before this lawsuit was filed.

Glen Mills' other claims under § 1981 are cognizable under that section, regardless of the applicability of the 1991 Civil Rights Act. *See Patterson*, 491 U.S. at 176–77, 109 S.Ct. at 2372–73 ("The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms."); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 91 (3d Cir.1978) (the latter part of 42 U.S.C. § 1981, which protects

 The same reasoning precludes a finding that the Township violated Glen Mills' rights under § 1981 by refusing to grant the permits it needed to construct its new classroom space. Glen Mills has established a *prima facie* case of discrimination by the Township as required by *McDonnell Douglas* and *Chauhan* by showing 1) that it is associated with a minority group; 2) that it applied for the permit to build its new classroom building; 3) that it has complied with all the usual requirements for such a permit; and 4) that it was denied the permit. The Township, for its part, has asserted that its requirement of a master plan would aid the Township in planning for emergency access, thus satisfying its burden under *Burdine* to articulate a legitimate, non-discriminatory reason for its actions.

As with the claim against the School District, Glen Mills has raised a genuine issue of fact as to the truthfulness of that explanation, but, again, that is not enough under *Hicks*. Glen Mills has not presented sufficient evidence to support a finding that the Township's resistance to the school's growth, if any, resulted from racial animus rather than its concern with the residents' fear—whether justified or not—of violence at the hands of Glen Mills' students. I will there-

fore grant summary judgment on Glen Mills' claims under 42 U.S.C. § 1981.

## C. Proof of Racial Animus under 42 U.S.C. § 1985(3)

 Glen Mills has not presented sufficient evidence of racial animus, under the test articulated by the Supreme Court in *Bray*, to maintain its § 1985(3) claim. Glen Mills has presented no evidence that the defendants' alleged efforts to prevent Glen Mills from purchasing the Thornbury School or constructing new classroom space were the result of racial animus against Glen Mills' students.[13] The evidence in this case supports a finding that the defendants feared or disfavored the Glen Mills students, and even may have wished to halt the growth of the school, because of those students' delinquent acts, or their status as delinquents. However, I cannot infer a racially discriminatory motive from the mere fact that the group of delinquent boys at issue happens to be predominantly black and latino.[14] I will therefore grant summary judgment on Glen Mills' claim under 42 U.S.C. § 1985(3).[15]

## II. The Substantive Due Process Claim

Glen Mills also alleges that the actions of the School District and the Township have

the right to the "full and equal benefit of all laws and proceedings for the security of persons and property that is enjoyed by white citizens" and the entitlement to "like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and no other" prohibits racially discriminatory administration and enforcement of the laws).

**13.** While the existence of the 1989 agreement for the disposition of the Thornbury School and its accompanying addendum is strong evidence of a conspiracy by the defendants to prevent Glen Mills' acquisition of that property *at that time*, Glen Mills has not submitted any evidence of more recent communications between the government entities, nor any communications directed toward stopping Glen Mills from building its own classrooms. Because the lack of evidence of racial animus is fatal to this claim, I need not decide whether there was a continuing conspiracy.

**14.** It is true that
Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively

or predominantly by a particular class of people, an intent to disfavor that class can readily be assumed. A tax on wearing yarmulkes is a tax on Jews.

*Bray,* — U.S. at ——, 113 S.Ct. at 760. Juvenile delinquency is not an "irrational object of disfavor" nor an "activity engaged in exclusively or predominantly by a particular class of people". While I recognize that many people believe that most juvenile delinquents are racial minorities, to infer a racial motivation from the defendants' fear of Glen Mills' delinquent students, without more, would give judicial credence to that racist stereotype.

**15.** While § 1985(3) prohibits conspiracies arising from other than racial motivations, *Novotny v. Great American Federal Savings and Loan Assoc.,* 584 F.2d at 1243 (holding that animus against women is a class-based animus prohibited by § 1985(3)), Glen Mills has not alleged any other class-based animus which might account for the defendants' actions. The type of personal or political motives which will establish a substantive due process claim will not support a claim under § 1985(3).

deprived it of substantive due process [16], and brings a claim for that deprivation under 42 U.S.C. § 1983.[17]

As Glen Mills' claim is not a procedural due process challenge to the validity of the defendants' procedures for redress of grievances, but instead alleges an abuse of governmental power, the claim is governed by the decision of the Third Circuit in *Bello v. Walker*, 840 F.2d 1124 (3d Cir.), *cert. denied*, 488 U.S. 851, 868, 109 S.Ct. 134, 176, 102 L.Ed.2d 107, 145 (1988). *See Carr v. Town of Dewey Beach*, 730 F.Supp. 591, 609 (D.Del. 1990) (distinguishing between procedural and substantive due process claims). In *Bello* the Third Circuit held that "the deliberate and arbitrary use of government power violates an individual's right to substantive due process." *Bello*, 840 F.2d at 1129.·

*Bello* involved a developer who alleged that the local municipality delayed his application for a building permit because of personal animosity on the part of some members of the town council toward one of the developer's employees. *Id.* at 1127. In holding that the developer had stated a claim for denial of substantive due process, the court explained:

> We need not define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive. The plaintiffs in this case presented evidence from which. a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality, improperly interfered with the process by which the municipality issued building permits ... [for] reasons unrelated to the merits of the application for the permits. These actions

can have no relationship to any legitimate governmental objective....

*Id.* at 1129–30 (footnote omitted). While the existence of bias, bad faith, or an improper motive is a strong indicator that a particular governmental action was arbitrary or irrational, any government land use decision which is based on considerations other than those related to land use planning may form the basis of a substantive due process claim. *See Neiderhiser v. The Borough of Berwick*, 840 F.2d 213, 218 (3d Cir.) (video store operator stated a claim for denial of substantive due process when the Borough denied a zoning exemption because it was concerned about the "adult" nature of the videos he planned to sell), *cert. denied*, 488 U.S. 822, 109 S.Ct..67, 102 L.Ed.2d 44 (1988); *DeMutis v. Borough of Phoenixville*, No. 90–3519, 1990 WL 96100, 1990 U.S. Dist. LEXIS 8311 (E.D.Pa. July 5, 1990) (plaintiffs stated a substantive due process claim where Borough conditioned the issuance of a building permit upon payment of outstanding municipal liens); *Epstein v. Township of Whitehall*, 693 F.Supp. 309, 313–14 (E.D.Pa.1988) (plaintiff stated substantive due process claim by alleging that the Township conditioned approval of a subdivision plan on the requirement that the plaintiffs waive their rights under an unrelated contract).

Glen Mill's substantive due process claim against the Township, alleging that the Township conditioned issuance of the building permit on the preparation of a master plan which it did not require from others in order to hinder the school's growth, falls squarely within the parameters of the substantive due process claim as articulated by the Third Circuit. The Township denies that it was motivated by anything other than a

---

**16.** Glen Mills' complaint designates Count II as an allegation of "Due Process" violations, and then refers to its students' (procedural) rights under Pennsylvania Statute. In its answer to the Motions for Summary Judgment, however, Glen Mills abandoned any procedural due process claims on behalf of its students (already mooted by this court's denial of class certification) and articulated, instead, a claim for substantive due process violations. I instructed the defendants to respond to the plaintiff's revised due process claim by Order dated October 15, 1993. Each set of defendants filed a response.

**17.** Glen Mills alleges, and the defendants do not contest, that all defendants acted "under color of state law" and pursuant to policies generated or approved by "those whose edicts or acts may fairly be said to represent [the] official policy" of the School District and the Township, thus establishing the necessary predicate to municipal liability under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct..2018, 2037, 56 L.Ed.2d 611 (1978); *Bielevicz v. Dubinon*, 915 F.2d 845, 845, 850 (3d Cir. 1990).

desire to facilitate emergency services to the school, but Glen Mills has presented evidence that the Township was under pressure from the residents to "do something" about Glen Mills. Glen Mills has succeeded in raising a genuine question of fact as to the Township's true motivation, a question which cannot be resolved in the context of a motion for summary judgment. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 683 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

▆ Glen Mills also asserts a substantive due process claim against the School District, based on the School District's refusal to bargain in good faith for the sale of the Thornbury School after engaging in secret negotiations to sell the school to the Township and shut out Glen Mills. Glen Mills' claim against the School District does not involve the denial of a building permit or other objectively deserved benefit, as was the case in *Bello*. However, Glen Mills does allege an "abuse of governmental power", if the School District's actions were linked to arbitrary or irrational fears or prejudices about Glen Mills which are unrelated to the merits of the decision to sell the property. The question before me now is whether I should extend the reasoning of *Bello* to Glen Mills' allegations against the School District.

Though *Bello* involved the denial of a building permit, the Third Circuit did not restrict its holding that "the deliberate and arbitrary use of government power violates an individual's right to substantive due process" to that context. *Bello*, 840 F.2d at 1129. Instead, the court declined to "define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive". *Id.*

Other courts have extended *Bello*'s holding that consideration of factors unrelated to land use planning violates a permit applicant's substantive due process rights to other contexts. *See Lara, Inc. v. South Whitehall Township*, 729 F.Supp. 415, 419–420 (E.D.Pa. 1989) (township's conditioning settlement of tax litigation with licensor on termination of license to conduct auto races violated licensee's substantive due process rights: "[T]he

Township actions have no apparent relationship to any legitimate governmental objective related to the amusement tax litigation."); *Lipson v. Snyder*, 701 F.Supp. 541, 544–45 (E.D.Pa.1988) (allegations that judge conspired with defense attorneys to "fix" a trial stated a substantive due process claim). The Third Circuit has acknowledged, without deciding, that *Bello* may support a substantive due process claim where a state university professor was stripped of tenure for reasons unrelated to his performance of his duties. *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1138–39 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 305, 121 L.Ed.2d 228 (1992).

▆ I hold that the reasoning of *Bello* applies to a municipality's actions regarding the sale of public property. Glen Mills has raised a genuine issue of fact as to the School District's motives for its rejection of Glen Mills' offers to buy the Thornbury School and its imposition of a unique environmental inspection clause in the proposed agreement of sale. Therefore, I will also deny summary judgment on Glen Mills' substantive due process claim against the School District.

### ORDER

**AND NOW**, this 6th day of December 1993, upon consideration of the defendants' motions for summary judgment, plaintiff's response, and the replies thereto, it is **ORDERED** that those motions are **GRANTED** as to Counts I, III, IV, V, and VI of the Complaint. It is further **ORDERED** that the motions are **DENIED** as to Count II of the Complaint. It is further **ORDERED** that defendant Harold Zuber is **DISMISSED** from this action.