Reed **WALDRON**, Plaintiff,

v.

**SL INDUSTRIES, INC.; and SL Waber, Inc.,** Defendants.

Civ. A. No. 92–5445 (JEI).

United States District Court,
D. New Jersey.

April 21, 1994.

Samuel & Ballard by Alice W. Ballard, Philadelphia, PA, Ball, Livingston & Tykulsker by Stuart S. Ball, Newark, NJ, for plaintiff.

Cindrich & Titus by David B. Mulvihill, Pittsburgh, PA, Parker, McCay & Criscuolo by David Parker, Marlton, NJ, for defendants.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IRENAS, District Judge:

Plaintiff was employed by the defendants from 1972 until 1986, and again from January of 1989 until August of 1991, at which time his employment was terminated. Sixteen months after his termination, plaintiff filed a complaint in which he asserted claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.*

The defendants now move for summary judgment, alleging that the evidence of age discrimination adduced by the plaintiff is insufficient to create a triable issue of fact. Because we find that plaintiff has failed to present sufficient evidence of a discriminatory animus behind the defendants' decision to terminate his employment, summary judgment will be granted in favor of the defendants.

## I. BACKGROUND

### A. *Factual Background*

Defendant SL Waber, Inc. ("Waber") is a subsidiary of defendant SL Industries, Inc., that manufactures and distributes "multiple outlet strips, surge suppressors and other products designed to protect sensitive electrical and electronic equipment from power line surges, disruptions, and noise." Defendants' Brief in Support at 1–2.

Plaintiff Reed Waldron was employed by SL Waber from 1972 until 1986, when he was laid off pursuant to a reorganization/personnel cutback.[1] Plaintiff took a position with PTL, a division of the Pentron Corporation, which lasted for approximately two months. He then accepted a position with Electronic Protection Devices, a division of General Power Corp., which lasted for approximately two years.

While at the 1988 Comdex trade show in Las Vegas, plaintiff abruptly ended his relationship with General Power and sought reinstatement at Waber.[2] In January of 1989,

---

1. SL Waber indicated that, because plaintiff was not eligible for retirement benefits when he was laid off in 1986, the company purchased an annuity designed to pay him a monthly benefit equal to what he would have received had he qualified under the benefit plan. In addition, although plaintiff had signed a one-year covenant not to compete when he joined Waber, it was not enforced when he left the company in 1986.

2. As plaintiff tells it, he resigned his position with General Power over breakfast, when a supervisor broached the subject of relocation. Shortly thereafter, plaintiff approached Kevin Woznicki, Waber's Vice President of Sales & Marketing, at the Waber exhibition booth and informed him that he was ready to "pull booth duty." Woznicki advised plaintiff that no full-time positions were available, but the two decided that plaintiff

plaintiff was rehired by Waber as a full-time consultant to oversee a line of products that Waber was planning to acquire from General Power and resell under its own private label.[3] When the private label arrangement fell through in or around July of 1989, Waber offered plaintiff an opportunity to remain with the company in a quasi-sales representative capacity for the Electrical and Electronics markets,[4] whereby plaintiff would receive a guaranteed salary of $2,000.00 a month plus a five percent override on shipments above a certain number.

Plaintiff received three promotions during his second "tour of duty" with Waber. In December of 1989, plaintiff was given responsibility for the Consumer market as well as the Industrial. In July of 1990, after Waber decided to divide the position of Industrial Market Manager into Electrical and Electronics market components, plaintiff was elevated to the newly-created position of Electrical Market Manager.[5] In March of 1991, with the departure of the Electronics Market Manager, the positions were consolidated, and plaintiff was named Industrial Market Manager.

On August 8, 1991, plaintiff was advised that his position would be terminated due to a planned reorganization. Defendants explain that the decision was made to reintroduce the bifurcated Electronics Manager/Electrical Manager system, and that, "[h]aving had an opportunity to observe and assess Mr. Waldron's performance and abilities for more than a year, Waber made a legitimate business judgment that he was not the best candidate for either of the two newly-created positions." Brief in Support at 7. At the time of his termination, plaintiff was 63¾ years old.

### B. *Procedural History*

Plaintiff filed suit in this District on December 30, 1992, alleging claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1 *et seq.* Extensive discovery was completed, and a trial date was set for April 18, 1994.

On March 28, 1994, defendants filed the instant motion for summary judgment, alleging that the evidence of age discrimination adduced by the plaintiff was insufficient to create a triable issue of fact. In addition, defendants argued that plaintiff's rehiring by the company at age 61 created a "strong inference" that age discrimination was not the real reason for his termination. Plaintiff responded that his evidence was "fully sufficient, both to establish a prima facie case and to case serious doubt on the credibility of [the defendants'] proffered defenses."

## II. LEGAL ANALYSIS

### A. *Standard of Review in Summary Judgment Cases*

Under Fed.R.Civ.P.Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

would speak with Marty Moran, who had become President of Waber in April 1988, about a consulting position.

3. Plaintiff asserts that Marty Moran had wanted to put plaintiff on the payroll earlier, but was unable to retain him in anything other than consultant capacity because of the "strict budgetary and workforce or headcount controls of SL Industries." Plaintiff's Response at 4.

4. At the time, Waber had five product markets: Computer, Office Products, Consumer, Electri-

cal, and Electronics. The latter two of these were often referred to jointly as the "Industrial Market."

5. Scott Hammill, the former Industrial Market Manager, was named Electronics Market Manager.

Shortly after the plaintiff's promotion, Marty Moran resigned as President of Waber. In November of 1990, he was replaced by Ron Mazik.

242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict for that party. *Id.* A non-moving party may not rest upon mere allegations, general denials, or vague statements. If the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus. Inc. v. Local 825, Int'l Union of Operating Engineers*, 982 F.2d 884, 980–91 (3d Cir.1992).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. *Plaintiff's Claims for Age Discrimination*

■ Age discrimination claims under the LAD and the ADEA are governed by the same standards and burden of proof structures applicable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See generally Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 550, 569 A.2d 793 (1990); *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 595, 538 A.2d 794 (1988). Given this identity of standards, the Court will consider plaintiff's LAD and ADEA claims together.

■ The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To recover under the ADEA, a plaintiff must prove "by a preponderance of the evidence that age was the determinative factor in the employer's [adverse employment] decision." *Bartek v. Urban Redevelopment Authority*, 882 F.2d 739, 742 (3d Cir.1989). The three-stage shifting allocation of the burden of proof, originally developed in the context of Title VII employment discrimination cases, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), has been adapted for use in claims filed under the ADEA. *See, e.g., Maxfield v. Sinclair International*, 766 F.2d 788 (3d Cir:1985), *cert. denied* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986).

■ An employee asserting a disparate treatment claim carries the burden of proving, by a preponderance of evidence, that the employer intentionally discriminated against him on the basis of a particular protected characteristic, in this case age. *See St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993); *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 522 (3d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Because this is a "pretext" case, and not a "mixed motive" case, the plaintiff must prove by direct or indirect evidence that Waber's "discriminatory motive was the sole cause of the employment action." *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 472 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993).[6]

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a detailed method for establishing an inference of

---

**6.** The parties have briefed the case as one involving pretext and not mixed motives. However, even if we were to view the case in terms of mixed motives—whether under the legal framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or that created by the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991)—the result would not change, since our decision to grant summary judgment is based on the absence of evidence of discriminatory intent that, either in whole or in part, motivated the decision to terminate the plaintiff's employment.

discrimination in the absence of direct evidence. *Id.* at 802–05, 93 S.Ct. at 1824–26. *McDonnell Douglas* implemented a three-step analysis, which is applicable in the summary judgment context and which allocates the burden of production as follows: (1) plaintiff must come forth with sufficient evidence to establish a prima facie case of discrimination; (2) if plaintiff succeeds in establishing a prima facie case, the burden then shifts to the defendant, who must articulate some legitimate, non-discriminatory reason for the employee's rejection; (3) if defendant is able to meet this burden, plaintiff must be given the opportunity to come forth with sufficient evidence to show that the legitimate reasons offered by the defendant should not be believed *and* that the protected characteristic was "the real reason" for the adverse employment action. *St. Mary's,* ⸺ U.S. at ⸺, 113 S.Ct. at 2752; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Griffiths,* 988 F.2d at 472.

The Supreme Court's decision in *St. Mary's* clarified step three in the *McDonnell Douglas* framework. Previously, the plaintiff could meet the burden of proof merely by establishing that the non-discriminatory reason proffered by the defendant was not credible. See *Ezold,* 983 F.2d at 522; *Bennun v. Rutgers State University,* 941 F.2d 154, 170 (3d Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992).

Under *St. Mary's,* the plaintiff does not necessarily meet the burden by merely producing evidence that defendant's articulated reason is pretextual, but instead must prove by a preponderance of evidence that unlawful discrimination was the determinative factor underlying the adverse employment action. ⸺ U.S. at ⸺, 113 S.Ct. at 2752 ("It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."); *see also Griffiths,* 988 F.2d at 472; *E.E.O.C. v. MCI Int'l, Inc.,* 829 F.Supp. 1438, 1451 (D.N.J.1993) (applying *St. Mary's* in summary judgment context).

### 1. *The Prima Facie Case*

■ To establish a prima facie case of age discrimination, the plaintiff must prove by a preponderance of evidence that he was (1) a member of a protected class (here, persons aged forty to seventy), (2) qualified for the position, (3) dismissed from, or not selected for, a position, and (4) passed over in favor of a candidate sufficiently younger to permit an inference of age discrimination. *Maxfield,* 766 F.2d at 792–93; *see also Ezold,* 983 F.2d at 522. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *see also Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992).

■ Plaintiff indicates that (1) he was 63 years old at the time his employment was terminated, (2) he was qualified for the positions of Electrical or Electronics Marketing Manager, (3) he did not receive either position, and was in fact terminated, and (4) the position of Industrial Marketing Manager was ultimately given to Ed Brown, who at the time was 32 years old. Plaintiff has therefore presented evidence sufficient to establish a prima facie case.

### 2. *Articulation of Legitimate, Non–Discriminatory Reasons for the Employee's Termination*

■ If a prima facie case is established, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's rejection. If the defendant fails to produce evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the defendant's action, judgment must be entered on behalf of the plaintiff. *St. Mary's,* ⸺ U.S. at ⸺, 113 S.Ct. at 2747; *see also Ezold,* 983 F.2d at 522; *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). However, the defendant's burden is not one of persuasion, but only of production of evidence logically supporting a reason for the

dismissal.[7] *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179 (3d Cir.1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).

■ Defendants have presented the following explanation for the adverse employment decisions made as to the plaintiff: After a year in which Industrial Market sales dropped by more than $1.2 million from the preceding year, Waber concluded that "further restructuring changes would be necessary" if the company was to survive and prosper. Brief in Support at 6. One of these changes involved reverting to the previous bifurcated organizational structure under which each segment of the Industrial Market—Electrical and Electronics—would have its own manager.

Waber determined that plaintiff was not the best candidate for either of the two positions, despite his experience as Electrical Market Manager and Industrial Market Manager, for a variety of reasons, including:

1. Plaintiff's refusal to visit key customer accounts at their corporate headquarters, despite several conversations with Mr. Mazik in which plaintiff was reminded of the corporate policy encouraging such visits.

2. Plaintiff's inability to· develop key accounts or to develop a strategy for the industrial market, despite the assistance of Ron Mazik. *See* Mazik Dep. at T85/L13–T86/L3:

   As I said before, he couldn't or wouldn't visit major accounts in the electrical distribution market. His failure to develop a meaningful and detailed strategic plan in the industrial market. He

was only asked to do half, it was a major disappointment for myself. And it was the final straw. And I just realized that in the reorganized structure that—where we had to go after major accounts that Reed didn't seem like the right guy for the job.[8]

3. Plaintiff's poor performance in constructing his portion of the business plan for fiscal year 1992, which required Mazik and Woznicki "to do a massive overhaul to get it in shape to present it to our corporate office." Woznicki Dep. at T112/L20–24.

4. Plaintiff's poor performance at a "dress rehearsal," held a few days before the presentation of Waber's business plan to corporate management. Both sides concur that the plaintiff did "a lousy job," with plaintiff indicating that he "came· off as unprepared, which I was." Waldron Dep. at T494.

5. Plaintiff's apparent "uncertain[ty] of the direction in which the company was headed." Brief in Support at 7. During the presentation to management, plaintiff asserted that the plan of action was to foster growth by increasing "[sales] rep[resentative] commission[s]," when in fact the marketing staff had agreed beforehand that the emphasis would be placed on fostering new accounts. *See* Woznicki Dep. at T113/L1–24 (noting that the comment "made [Woznicki] look bad and Ron look bad"); T114/L12–15 ("It became obvious during that time and even at the meeting after that comment was made that [plaintiff] was unwilling or would be unable to do the things we needed to have done.").[9]

---

**7.** That is, there are no credibility determinations made in deciding whether the defendant has satisfied its burden of production.

**8.** *See also* Mazik Dep. at T63/L13–15 ("When we reorganized to go after the markets key account development was critical and [plaintiff] was either unwilling or unable to develop key accounts."); T63/L20–23 ("To be sure that Reed was getting a fair shake I asked that Reed report directly to me and that I would help him develop a strategy for the OEM accounts. I actually went on visits to some OEM accounts with him."). Both Woznicki and Mazik speak of Mazik's deci-

sion to work with plaintiff in developing key accounts in terms of tutelage, professional development, and corrective action.

**9.** Mr. Woznicki testified that, as this was Mr. Mazik's first business plan presentation, "we had to give the impression at least that we had a united front, that whatever we stated in our statements was exactly what we had stated in our presentation." Woznicki Dep. at T126/L22–T127/L3. Plaintiff's off-handed (and incorrect) comment about the proposed course of action, according to the defendants, lessened the impact of the presentation.

This evidence, taken as true, presents several non-discriminatory reasons for the termination of plaintiff's employment. We therefore find that the defendants have met their burden of production.

### 3. Demonstration that the Proffered Explanations Are Pretexts for Discrimination

■ Once the defendants provide evidence to defend their "legitimate, nondiscriminatory" reasons for their actions, the presumption of illegal discrimination is rebutted and drops from the case. *St. Mary's,* — U.S. at —, 113 S.Ct. at 2750. The plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons are merely a pretext for unlawful discrimination. At this stage, the plaintiff's burden of proving pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination. Plaintiff must show both that the reason was false, and that discrimination was the real reason. "[T]he ultimate question [is] discrimination *vel non.*" *U.S. Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).[10]

> Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of (in the context of the present case) [age]. That the employer's proffered reason is unpersuasive, or even obviously incorrect, does not necessarily establish that the plaintiff's proffered reason of [age] is correct.

*St. Mary's,* — U.S. at —, 113 S.Ct. at 2756. And under the ADEA, as in Title VII,

even if the employer's explanation for its decision is unworthy of credence, a plaintiff must also show at least indirect evidence of *age* motivation, which the Supreme Court distinguished from "other unsavory motives." *MCI Int'l, Inc.,* 829 F.Supp. at 1450 (quoting *Hazen Paper Company v. Biggins,* — U.S. —, —, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993)).

■ While *St. Mary's* was not a summary judgment case, its principles can easily be incorporated into the conventional summary judgment framework, as explained in *E.E.O.C. v. MCI Int'l, Inc.,* 829 F.Supp. at 1451:

> [D]efendant, as the moving party, bears the burden of demonstrating that there are no genuine issues of material fact for trial. Because plaintiff, as the non-moving party, will bear the burden of proof at trial, the defendant may satisfy its burden by showing that plaintiff has failed to adduce evidence sufficient to establish an essential element which plaintiff would have to prove at trial—here, that the defendant's reasons were false and that discrimination was the real reason, and plaintiff must come forward with specific facts showing that there is, indeed, a genuine issue for trial.
>
> The facts, of course, must be viewed in the light most favorable to plaintiff and all reasonable inferences must be drawn in plaintiff's favor. Thus, where the falsity of defendant's reasons is at issue, the facts must be viewed as the plaintiff views them unless, of course, those facts are not probative of the issue of falsity or because merely conclusory statements are offered.

---

For these reasons, defendants claim, the plaintiff was excluded from consideration from the two positions. Ed Brown was promoted to the position of Electronics Market Manager. The position of Electrical Market Manager remained vacant for some time, until Waber decided to consolidate the Electrical and Electronics market manager positions once again and add another position at a lower tier on the organizational chart.

**10.** *See also E.E.O.C. v. MCI Int'l, Inc.,* 829 F.Supp. 1438, 1450 (D.N.J.1993):

> A reason "cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the

reason was false, *and* that discrimination was the real reason." [*St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2752 (emphasis in original)]. Thus, the Court concluded, once the defendant submits evidence of the reason for its action as to a particular plaintiff, the factfinder must decide not whether that evidence is credible but, rather, the ultimate factual issue in the case, *i.e.,* whether the employer intentionally discriminated against the plaintiff. [*Id.,* 113 S.Ct. at 2752–53.] The plaintiff at all times bears the ultimate burden of persuasion. [*Id.,* 113 S.Ct. at 2749.]

But even assuming the falsity of defendant's reasons for purposes of summary judgment, plaintiff will have to demonstrate as to a particular claimant that those false reasons together with the prima facie case raise a genuine issue of material fact as to whether the defendant intentionally discriminated against that claimant and, of course, may submit additional facts, if any, to support this claim. If plaintiff cannot do so, summary judgment will be granted; if plaintiff does do so, summary judgment will be denied.

*Id.*[11] Plaintiff has presented evidence (1) to cast doubt on the reasons proffered by the

11. The circuits are divided on the issue of what proof must be presented by the plaintiff to avoid summary judgment under the standards outlined *St. Mary's*. The Fourth, Seventh, Eighth, Ninth, and Eleventh Circuits have found that, where the plaintiff establishes a prima facie case and raises a genuine issue of material fact as to whether the employer's explanation for its action is true, summary judgment is inappropriate. *See Mitchell v. Data General Corp.*, 12 F.3d 1310 (4th Cir.1993); *Anderson v. Baxter*, 13 F.3d 1120 (7th Cir.1994); *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104 (8th Cir.1994); *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir.1993); *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 921 (11th Cir.1993); *but see Gaworski, supra*, at 1116 (Gibson, J., dissenting). This "pretext-only" standard, *see* Catherine J. Lanctot, *The Defendant Lies and the Plaintiff Loses: The Fallacy of the "Pretext–Plus" Rule in Employment Discrimination Cases*, 43 Hastings L.J. 57 (1991), is, not surprisingly, the standard championed by the plaintiff in this case.

The circuits who have adopted the pretext-only standard have relied upon the following dicta from *St. Mary's:*

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination and the Court of Appeals was correct when it noted that, upon such rejection, "no additional proof of discrimination is *required.*"

*St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2749 (footnote omitted) (emphasis in original). They interpret this passage to mean that although a plaintiff is not entitled to judgment as a matter of law simply because he proves his prima facie case and demonstrates that the reasons proffered by the employer are false, he is entitled to submit the case to a jury. *See, e.g., Anderson*, 13 F.3d at 1123.

Other courts have required a more substantial showing on plaintiff's part. The First, Second, Fifth, and Tenth Circuits have required that the plaintiff demonstrate both that the employer's reasons are false and that the real reasons were discriminatory—the so-called "pretext-plus" standard. *See LeBlanc v. Great American Insurance Co.*, 6 F.3d 836 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134 (2d Cir.1993); *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Durham v. Xerox Corp.*; 18 F.3d 836 (10th Cir.1994). *See generally* Lanctot, *supra* (discussing "pretext-plus" standard). Relying on *St. Mary's* and earlier Supreme Court opinions, these courts reason that because the plaintiff bears the ultimate burden of persuasion at all times, he must demonstrate both pretext and discrimination in order to avoid summary judgment. Defendants, understandably, proffer this as the appropriate standard of review.

The Third Circuit has not spoken on the issue of what quantum of proof is necessary to defeat a summary judgment motion brought by the employer, but most of the decisions from districts within the circuit have adopted the "pretext-plus" standard. *See, e.g., Sullivan v. Standard Chlorine of Delaware*, 845 F.Supp. 167 (D.Del. 1994); *MacFarland v. Corestates Bank, N.A.*, No. 92–6895, 1994 WL 70005 (E.D.Pa. Feb. 28, 1994); *Stewart v. Personnel Pool of America, Inc.*, No. 92–2581, 1993 WL 525575 (D.N.J. Dec. 16, 1993); *McKenzie v. Merck & Co., Inc.*, No. 93–0525, 1993 WL 493306 (D.N.J. Nov. 24, 1993); *Board of Managers v. West Chester School District*, 838 F.Supp. 1035 (E.D.Pa.1993); *Caldwell v. Frances Nurses Directory, Inc.*, No. 92–4834, 1993 WL 409163 (E.D.Pa. Oct. 8, 1993); *McGough v. Bethenergy Mines, Inc.*, 837 F.Supp. 708, 710 (W.D.Pa.1993); *Jenkins v. Pennoni Associates*, No. 92–4689, 1993 WL 405832 (E.D.Pa. Sept. 29, 1993) (granting summary judgment based on failure to file claim with the E.E.O.C. pursuant to 29 U.S.C. § 626(d)(2); also noting that plaintiffs must present evidence of age discrimination in addition to evidence of pretext); *E.E.O.C. v. MCI Int'l, Inc.*, 829 F.Supp. 1438 (D.N.J.1993); *but cf. DiBiase v. SmithKline Beecham Corp.*, 847 F.Supp. 341, 345 (E.D.Pa.1994) ("Summary judgment for the employer is appropriate, therefore, if the plaintiff fails to make a factual showing sufficient to 1) establish her prima facie case; or 2) refute the defendant's articulated non-discriminatory reasons.").

We believe that the Third Circuit would adopt the pretext-plus standard for deciding summary judgment motions. When taken out of context, the quote from *St. Mary's* cited by the pretext-only jurisdictions indeed seems to foreclose summary judgment where the plaintiff raises an genuine issue of fact as to whether the employer's justification are pretextual. However, when read together with the remainder of the opinion, the passage is nothing more than a recognition that there may be situations in which the employer's proffered justifications are so obviously contrived

defendants for the adverse employment action and (2) to demonstrate that age discrimination was the actual reason. We will examine each in turn.

### a. Refuting the Defendants' Reasons

■ Plaintiff presents the following evidence and arguments to rebut the defendants' explanation for the termination:

1. *Corporate Reorganization:* While plaintiff acknowledges an industry-wide slump at the time of his termination, he maintains that the defendants' explanation of corporate reorganization was nonetheless pretextual because (1) the position of Electrical Market Manager was never advertised,[12] (2) the changes were not part of the business plan presented in June, and (3) several months after plaintiff's departure, the decision was made to consolidate the Electrical and Electronics Market Managers positions into one position, which was given to Mr. Brown, and add a second position at a lower tier on the organizational chart.

2. *Calling on Key Accounts:* Plaintiff concedes that he disregarded the company policy of calling on key accounts because he felt that "[y]ou don't have to go out and call on them all the time to keep a relationship going." Waldron Dep. at T439/L9–11. However,

---

that disbelief of the reasons plus the prima facie case may support a finding of age discrimination. *See also St. Mary's,* —— U.S. at —— n. 4, 113 S.Ct. at 2749 n. 4 ("Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*") (emphasis in original).

A full reading of the *St. Mary's* majority opinion, particularly the section addressing the arguments of the dissent, supports our conclusion that a plaintiff must demonstrate triable issues of both pretext and discrimination before proceeding to trial. The majority stressed that a "reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's,* 113 S.Ct. at 2752 (emphasis in original); *see also id.,* 113 S.Ct. at 2754 ("It is not enough to *dis*believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.") (emphasis in original).

Moreover, the majority cast doubt on the validity of dicta in *Burdine* which indicated that a plaintiff could prove discrimination "indirectly, by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Noting numerous inconsistencies between this statement and other Supreme Court pronouncements in *Burdine* and elsewhere, the majority in *St. Mary's* concluded "that the dictum at issue here must be regarded as an inadvertence, to the extent it describes disproof of the defendant's reason as a totally independent, rather than an auxiliary, means of proving unlawful intent." *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2753. In other words, a plaintiff can bolster his evidence of age discrimination by demonstrating that the employer's reasons are unworthy of credence, but he must offer some proof of discrimination. Since many of the circuit court decisions that endorse the pretext-only standard rely on this passage from *Burdine,* disa-

vowal of the passage by the Supreme Court gives us further reason to doubt the validity of the standard.

In the penultimate paragraph of the *St. Mary's* majority opinion, the Court reaffirmed the following paragraph from *Aikens:*

[T]he question facing triers of fact in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy. There will seldom be "eyewitness" testimony as to the employer's mental processes. *But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact.* Nor should they make their inquiry even more difficult by applying legal rules which were designed to govern "the basic allocation of burdens and order of presentation of proof," *Burdine,* 450 U.S. at 252, 101 S.Ct. at 1093, in deciding this ultimate question.

*United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482 (emphasis added). To allow the plaintiff in this case to proceed to trial without raising a genuine issue of material fact as to the ultimate question of discrimination would, in effect, "treat discrimination differently from other ultimate questions of fact." Moreover, it would permit disproof of defendants' reasons to suffice as an independent means of proving discriminatory intent—precisely what the *St. Mary's* majority rejected. We therefore adopt the "pretext-plus" standard already adopted by other courts in this District and Circuit.

**12.** Woznicki testified that Waber commenced a "very informal search" for an electrical market manager in September (essentially, discussing the vacancy with a New York headhunter), but did not, to the best of his knowledge, advertise the position.

he asserts that this reason is also pretextual because (1) three months prior to his termination, some of Waldron's key accounts were transferred to Ed Brown, and (2) Brown did not call on key accounts when he was promoted to Electronics Market Manager.

3. *The Business Plan "Dress Rehearsal"*: Plaintiff alleges that the defendants' reliance on his poor performance at the business plan dress rehearsal was pretextual because he performed adequately at the actual presentation.

Reading these allegations generously, we find that, at best, they call into question a few of the defendants' reasons for the termination.[13] However, most of plaintiff's "evidence" of pretext is in fact nothing more than conclusory allegations, the litigational equivalent of a raised eyebrow. It is questionable that this evidence, even when viewed in the light most favorable to the plaintiff, is sufficient to raise a genuine issue of fact as to pretext.

In order to survive a motion for summary judgment, plaintiff must do more than simply cast doubt on the defendant's reasons for termination. Many termination decisions, such as the one in this case, are made on the basis of the employer's conclusion that the employee's job performance was unsatisfactory. It is difficult to imagine any case in which the plaintiff could not create a genuine factual dispute about whether his performance was satisfactory. That is, almost any litigant could argue that the proffered reasons for his termination were factually incorrect or incomplete. To allow a motion for summary judgment to be defeated simply because there was a dispute concerning the factual premises underlying the employer's termination decision would obviate the *McDonnell Douglas/Burdine/St. Mary's* framework. The plaintiff must do more than dispute the accuracy of the reasons given for his termination. He must instead point to evidence of discrimination on the basis of plaintiff's status as a member of a protected class.

■■■ A defendant may be wrong or misguided when taking adverse employment action. However, the law only offers a remedy when that adverse decision is motivated by an improper bias. We turn therefore to an analysis of the plaintiff's evidence of age discrimination.[14]

### b. The Evidence of Bias

■■■ The sum total of plaintiff's evidence of bias is as follows:

1. Plaintiff argues that a "double standard" was applied when considering him and Ed Brown for the positions of Electrical Market Manager and Electronics Market Manager. While plaintiff was criticized for not making key account calls, Ed Brown, who had never made sales calls, was promoted. In addition, plaintiff notes that Ed Brown had less experience than he, although

---

**13.** Since much of this evidence of rebuttal is recast later as evidence of bias, we will address the merits of the plaintiff's claims in the next section.

**14.** Defendants argue that we should adopt the holding of the Fourth Circuit in *Proud v. Stone*, 945 F.2d 796 (4th Cir.1991), that where (1) the plaintiff is a member of a protected class at the time of his hiring, (2) the hirer and firer are the same individual, and (3) the termination of employment occurs within a relatively short span following the hiring, a "strong inference" arises that the reasons given by the employer are not a pretext for discrimination. *Id.* at 797; *see also LeBlanc v. Great American Insurance Co.*, 6 F.3d 836 (1st Cir.1993) (extending inference to situations in which employee is promoted and terminated by same individual); *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173 (8th Cir.1992);

*Gemmell v. Fairchild Space & Defense Corp.*, 813 F.Supp. 1152, 1156 (D.Md.1993). The rationale behind this line of cases is that "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." *Moore v. Reese*, 817 F.Supp. 1290, 1299 (D.Md.1993).

Because plaintiff here has raised questions about which individuals were responsible for the plaintiff's hiring, promotions, and firing, we decline to adopt the inference structure outlined in *Proud*. We do, however, accept the logic that underlies that *Proud* inference. The fact that the plaintiff was hired while a member of a protected class is, we believe, evidential on the issues of both pretext and discriminatory animus. In addition, the fact that plaintiff was promoted by Mazik a scant five months before being fired by him casts further doubt on plaintiff's claims of discrimination.

Brown had more continuous years of service to Waber.[15]

2. When plaintiff was promoted to the position of Industrial Market Manager in March of 1991, Mr. Mazik commented to him that he should lose weight, as it would make him feel better and "look younger."[16]

3. Plaintiff perceived an absence of older employees in Waber's marketing and sales departments. Waldron Dep. at T403/L10–11.

4. Plaintiff mistakenly believed that SL Industries, the parent company of SL Waber, had previously lost an age discrimination suit.

This evidence is insufficient as a matter of law to create a triable issue of material fact as to whether age discrimination was the motivating factor in the defendants' decision to terminate the plaintiff's employment.

We reject plaintiff's contention that a "double standard" was applied in deciding whether the plaintiff was a suitable candidate for either of the market manager positions. The typical double standard case involves a situation in which a number of people apply for a particular position, candidates are evaluated according to the same objective criteria, and the criteria are applied differently to different candidates. *See, e.g., Bennun v. Rutgers State Univ.*, 941 F.2d 154 (3d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992) (finding that employer's explanations of "poor quality and insufficient quality" of research were pretextual, where plaintiff demonstrated that he had published more articles and received more favorable reviews than non-Hispanic faculty who had been granted tenure); *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d. Cir.1980) (finding that employer's explanation that plaintiff was not promoted because of lack of master's degree pretextual, where other faculty members without master's degrees were promoted). However, where subjective criteria are employed, the Third Circuit has cautioned courts against "'unwarranted invasion or intrusion' into matters involving professional judgments about an employee's qualifications for promotion." *Ezold*, 983 F.2d at 527.

The case at bar involved subjective business decisions as to whether the plaintiff and Ed Brown were suited for management positions comprising both "internal" (e.g., administration, telemarketing) and "external" (e.g., key account calls) components. There is no indication from the record that Mr. Brown was in any way deficient as to the internal components of the position,[17] and his abilities with respect to the external portion were unproven. Plaintiff, on the other hand, had demonstrated his weakness in handling administrative matters on several occasions (particularly during the preparation and presentation of the business plan), while simultaneously indicating his unwillingness to do at least a portion of the external tasks (namely, the key account calls).[18]

---

**15.** Curiously, plaintiff does not dispute the accuracy of the reasons given, but merely argues that the defendants did not rely on them when terminating his employment. Moreover, plaintiff offers no evidence to rebut several of the defendants' reasons for the termination, such as plaintiff's poor performance in crafting and presenting the business plan.

**16.** At the time the comment was made, plaintiff was 5'8" and approximately 240 pounds.

**17.** Indeed, plaintiff conceded at oral argument that several people at Waber, including himself, were grooming Mr. Brown for a management position.

**18.** One of the key elements of plaintiff's double standard claim is that because defendants cited plaintiff's unwillingness to make key account calls as one of the reasons for his termination, their decision to promote someone with little if any experience in making such sales calls raises an inference of discrimination. We disagree. If the plaintiff had presented evidence that the ability to make key account calls was a *sine qua non* of the market manager position, he might perhaps have raised an inference of pretext (but not, without more, an inference of discrimination). However, levying a legitimate criticism of an employee's performance in one area of his job is quite different from making proper performance of that area a necessary requirement for holding the position.

Parenthetically, we note that plaintiff's unwillingness to abide by corporate policy is also significant in that it displays his attitude towards his position and his willingness (or reluctance, as the case may be) to participate as a "team player" in the revitalization of the company.

Defendants in this case were required to evaluate the plaintiff and Mr. Brown in a number of categories, many of which were highly subjective and required professional judgment about the relative merits of each candidate. Each of the candidates offered different strengths, without some evidence of discrimination, we will not second-guess the defendants' evaluations. *Cf. Ezold*, 983 F.2d at 512–13 (reversing trial court for "impermissibly substitut[ing] its own subjective judgment" for the employer's). On the record before us, we cannot find that defendants employed a double standard in evaluating the plaintiff's qualifications.

Mazik's comment that plaintiff might consider losing weight in no way indicates that plaintiff's termination was motivated by age. The comment was made five months before the plaintiff's termination, in the context of a promotion. Plaintiff concedes that the comment was not tied in any way to his continued employment, and even remarked that he did not give the comment a second thought until after his termination. Waldron Dep. at T401/L9. In short, we believe the comment to be a stray remark entitled to little if any weight, as explained in *Ezold*, 983 F.2d at 545:

> Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly is they were made temporally remote from the date of decision. *See [Price Waterhouse v.] Hopkins*, 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring); *Frieze [v. Boatmen's Bank of Belton]*, 950 F.2d [538] at 541 [ (8th Cir. 1991) ]; *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378–79 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). We decline to depart from this principle in the present case.

*Id.*[19]

As for plaintiff's claims regarding the number of Waber employees over age 40, we note that while statistical evidence of an employer's pattern and practice with respect to employment of a protected class may be relevant to a showing of pretext, *see Ezold*, 983 F.2d at 542–43 and cases cited, plaintiff's bald assertions are insufficient to raise a triable issue either of pretext or discriminatory animus.[20]

Finally, we note that plaintiff's reliance on a prior age discrimination suit is misplaced. The suit was filed three years before the plaintiff's hiring, and five years before his termination.[21] It was brought against SL Industries, Waber's parent company, and had nothing to do with Waber. Lastly, the suit was settled out of court—it was not, as plaintiff stated at deposition, a judgment against Waber. Indeed, while plaintiff argues that the 1986 suit demonstrates a tendency towards age discrimination, we believe than a contrary inference can also be drawn—that a prior age discrimination suit might have made the company more sensitive to its older employees.

In any event, this meager evidence comes far short of establishing "pretext for discrimination," nor does it even raise a triable issue of fact. Even were we to find that plaintiff had raised a genuine issue of fact as to pretext, the record is simply devoid of evidence of discrimination. Our conclusion is bolstered by the fact that plaintiff was hired for his second "tour of duty" with Waber when he was 61 years old and promoted three times in the next two years, which hardly demonstrates a discriminatory animus towards older workers. Summary judgment will therefore be granted in favor of the defendants. An appropriate order will be entered.

---

**19.** Plaintiff mistakenly cites a series of cases that stand for the proposition that stray remarks made by decisionmakers may not be excluded from the jury. However, the question is not whether such a statement may be kept from the jury but rather whether, under the facts of this case, it would create a triable issue of fact. *Hopkins* and *Ezold* inform our decision that it does not.

**20.** The absence of corroborative evidence is particularly telling where, as here, extensive discovery of the case has been completed prior to the filing of the summary judgment motion.

**21.** In fact, plaintiff conceded at deposition that he had not spoken with the plaintiff in that case, Newt Whitcomb, since 1986.