**John T. RUSSELL, Plaintiff,**

v.

**ACME–EVANS COMPANY, ADM Milling Co., and Archer–Daniels–Midland Company, Defendants.**

**No. IP 93–871C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 20, 1994.

Richard J. Darst, Mantel Cohen Garelick Reiswerg & Fishmann, Indianapolis, IN, for plaintiff.

Kenneth J. Yerkes, Tim A. Baker, Barnes & Thornburg, Indianapolis, IN, for defendants.

BARKER, Chief Judge.

Defendants Acme–Evans Company/ADM Milling Co. ("Acme–Evans") and the Archer Daniels–Midland Company (collectively, "Defendants") move for summary judgment on Plaintiff John T. Russell's ("Russell") Complaint. For the reasons stated below, we grant Defendants' motion.

## I. BACKGROUND

Defendant Acme–Evans, an Indiana corporation, operates a flour-milling business in Indianapolis and is a subsidiary of Defendant Archer–Daniels–Midland Company. Plaintiff Russell, a 60–year–old African–American man, worked at Acme–Evans first as a laborer at the grain elevator from August 15, 1975 to 1977 and then as a mill sweeper from 1977 to August 27, 1992. On August 27, 1992, Russell was removed from the position of sweeper to the position of skid wrapper. Russell claims that the skid wrapper position is more strenuous than the sweeper position. A skid wrapper uses a spool of film wrap on an applicator to cover each skid of bagged flour with wrap several times to secure a load. Russell wraps close to 50 to 60 skids each day.

Russell bid for the position of assistant miller on August 28, 1992, but the position was first offered to Calvin Hatcher, a 35–year–old black male, who declined the position. The job was then offered to Charles Helton, a 32–year–old white male, who accepted. Russell maintains that he had more seniority than Helton and was qualified for the position. Section 4.06 of the collective bargaining agreement between Acme–Evans and the American Federation of Grain Millers AFL–CIO Local 184 provides:

A—*Posting*—... Any employee who holds a lower classification may bid for the vacant classification. The Company will award the job in accordance with plant seniority and qualifications, such to the provisions of paragraph B and C below.

B—*Qualifications*—The decision regarding an employee's ability and qualification to perform the job shall be the sole decision of the Company.

*See* Defendants' Exhibit 6 in Support of Motion for Summary Judgment.

In April and May of 1993, John Hazel quit the "blowdown crew," a four-person crew used to clean the mill at Acme–Evans each month. Russell claims that he was entitled to work the overtime blowdown crew hours Hazel gave up and that these overtime work opportunities were given instead to a younger white man.

On July 7, 1993, Russell filed his Complaint alleging discrimination based on race and age in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e and related sections and the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. §§ 621–634. Defendants now move for summary judgment on all claims.

## II. DISCUSSION

### A. Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is prop-

er "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

The Seventh Circuit Court of Appeals has described the application of these principles in the context of Title VII litigation:

> In Title VII cases, we approach the application of these principles with a special caution. Summary judgment is infrequently an appropriate resolution. The factual issues presented in such litigation, including the issue of discriminatory intent which is often proven by circumstantial evidence, cannot often be resolved on summary judgment. However, even when such issues of motive or intent are at stake, summary judgment is proper "where the plaintiff presents no indications of motive and intent supportive of his position."

*Powers v. Dole,* 782 F.2d 689, 694 (7th Cir. 1986) (citations omitted).[1]

### B. Title VII and ADEA Claims

#### 1. Prima Facie Case

■ In a discrimination case where the disparate treatment of an employee is at issue, a plaintiff may produce direct or indirect evidence of discrimination. The indirect method involves the burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and begins with a plaintiff's prima facie case.[2] To establish a prima facie case of discrimination, Russell must show that (1) he belongs to a protected class; (2) he performed his job satisfactorily, applied for the new job, and was qualified for the new job; (3) he suffered an adverse employment action or was rejected despite his qualifications; (4) Acme–Evans treated similarly situated employees outside his classification more favorably. *See Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir.1994); *Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994) (quoting *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992)); *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994).[3] Defen-

---

1. *See also Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993) ("[The summary judgment standard] is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues.")

2. The burden-shifting framework of *McDonnell Douglas* has been extended to age discrimination cases. *See Shager v. Upjohn Co.,* 913 F.2d 398, 400 (7th Cir.1990).

3. In *Robinson v. PPG Industries, Inc.,* 23 F.3d 1159 (7th Cir.1994), the Seventh Circuit gave a slightly different prima facie test. A plaintiff must show that "(1) he fell within the protected class of persons between the age of 40 and 70; (2) he was meeting his employer's legitimate expectations; (3) he was discharged or demoted; and (4) that younger employees were treated more favorably." *Id.* at 1162. *See also Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 153, n. 2 (7th Cir.1994) (describing four different statements of the prima facie requirements in cases involving discharges).

dants maintain that Russell has failed to establish elements three and four of his prima facie case.

### a. Adverse Employment Action

Defendants first contend that Russell has failed to show that his transfer to the position of skid wrapper from sweeper was an adverse employment action because there is no evidence that Russell's transfer to the skid wrapper position from sweeper was more strenuous. In *Crady v. Liberty National Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993), the Seventh Circuit noted that a "materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

The Court finds that Russell has demonstrated that there are material facts in controversy regarding whether his transfer was an adverse employment action. First, he points out that he wears out a pair of shoes five times faster than on the sweeper job. Second, he notes that Defendants concede that less overtime existed in the packing department to which Russell was transferred. *See* Defendant's Brief in Support of Summary Judgment, at 9. The Court also finds that the denial of the promotion to the position of assistant miller and the denial of overtime from the blowdown position are adverse employment decisions. We therefore find that a reasonable jury could find that the third element of his prima facie case has been met.

### b. More Favorable Treatment of Similarly Situated Employees

Defendants next maintain that Russell fails to prove the fourth element of his prima facie case because Larry George, a white male over the age of 40 was also transferred to the flour-bagging area. With regard to the assistant miller position, Defendants point out that Calvin Hatcher, a black employee, was first offered the position; thus, race discrimination did not occur.

In *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 155 (7th Cir.1994), the Seventh Circuit found that "a district court had erred in holding, as a bright-line test, that the plaintiff[4] could not prove a prima facie case because the person who was ultimately hired for the job was 46 and, therefore, also a member of the protected class." While noting that the Seventh Circuit has recognized that in some circumstances a court might make an inference of non-discrimination where the hired person was from the protected class, the Court finds that under the facts of this case, where Russell has pointed to numerous instances of allegedly unequal treatment between black and white workers, younger and older workers, Russell's age and discrimination claims do not fail merely because of the similar demotion and offer of promotion to Larry George and Calvin Hatcher respectively. The Court finds that a trier-of-fact could reasonably conclude that Russell has satisfied his prima facie case.

### 2. Acme–Evans' Non–Discriminatory Reasons

Having found that Russell has established a prima facie case of race and age discrimination, the burden shifts to Acme–Evans to articulate some legitimate, nondiscriminatory reason for the employment decision. Should Acme–Evans carry this burden, Russell must then have an opportunity to prove by a preponderance of the evidence that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994) (citing *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

Defendants give three reasons for transferring Russell to the position of skid wrapper: (1) The skid wrapper position allowed Acme–Evans to supervise Russell's work more closely; (2) The job transfer and in-

---

**4.** The plaintiff in the *Kralman* case was 71 years old.

creased supervision were designed to result in a more efficient use of Russell's time; (3) Russell had numerous job performance problems in his sweeper position. *See* Defendants' Exhibit 8 in Support of Motion for Summary Judgment. With regard to the denial of the assistant miller position to Russell, Defendants offered several reasons: (1) Russell's lack of experience in the assistant miller position; (2) Russell's failure to list specific qualifications in his application for the position; (3) Russell's obligations as a Jehovah's Witness potentially interfering with his ability to perform the position, which involves working erratic hours and shifts; (4) Charles Helton's superior qualifications because he "demonstrated a mechanical aptitude, worked well with others, and had actively sought promotions within Acme–Evans." Regarding the denial and decrease of Russell's overtime, Defendants point out that the amount of overtime allowed to workers decreased plant-wide and that Russell already had obtained a disproportionately high number of overtime hours.

The Court finds that Defendants have satisfied their burden of production to "introduce evidence, which *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) (emphasis in original). Because "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with plaintiff," the Court must examine whether Plaintiff can show evidence of pretext. *Id.* at ——, 113 S.Ct. at 2747.

### 3. Pretext

■ Russell can prove that Defendants' proffered reasons for their employment decisions are pretextual by one of two methods: "(1) by showing that a discriminatory reason more likely than not motivated [Acme–Evans] (i.e., that the company's proffered reasons were not the sole determining factor in addition to the proffered reasons); or (2) [Acme–Evans'] proffered explanation is unworthy of credence." *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156

(7th Cir.1994). In *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992), the Seventh Circuit noted that "the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers."

Russell offers several arguments to refute Defendants' three reasons for transferring him to the position of skid wrapper. First, he contends that his constant wandering around the flour mill cannot be the basis for his transfer because his mill sweeping job required moving around the mill. Russell Affidavit, at ¶ 33. In response to Defendants' suggestion that Russell needed closer supervision, Russell argues that because Defendants never informed him of such a need before or immediately after he was transferred, the reason must be pretextual. *See* Plaintiff's Brief in Opposition to Summary Judgment, at 36. Second, Russell maintains that the "greater work efficiency" reason was more efficient at the mill sweeper position that he held for fifteen years than at a job he did not want. *See* Plaintiff's Statement of Genuine Issues, at ¶ 18. Finally, Russell argues that the poor job performance reason had "no basis in fact because they were untrue, petty criticisms which the union did not agree to and which were made up after Russell complained after discrimination." *See* Brief in Opposition to Summary Judgment, at 47.

Taking the facts in the most favorable light to Plaintiff, the Court agrees with Russell that a trier of fact could find that the first two reasons proffered by Defendants are not legitimate reasons for transferring Russell to the skid wrapper position. However, the third reason—Defendants' evaluation of Russell's job performance—requires closer scrutiny because Russell's rebuttal relies entirely on his affidavit.

The Seventh Circuit has shown extreme reluctance to find a triable issue of fact regarding pretext where the sole or primary basis is the plaintiff's own affidavit. Recently, in *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1460 (7th Cir.1994), the Seventh Circuit reaffirmed the principle

that evidence from the employee that he was performing his job adequately "does not shed any light on whether the employer honestly based its employment decision on performance-related considerations, which is the focus of our inquiry in these cases."[5] *See also Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 924 (7th Cir.1988) (employee's self-interested assessment of her own job abilities are insufficient to raise an issue of fact); *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability"); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125 (7th Cir.1994) ("mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory, or more specifically that an employee's performance is satisfactory because he was not entirely responsible for several admitted mishaps, does not create a material issue of fact."); *Peterson v. King Tree Center, Inc.,* 722 F.Supp. 360 (S.D.Ohio 1989). The rationale behind these cases was more fully explained in *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994), where the Seventh Circuit noted:

It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. *Mister v. Illinois Cent. Gulf R.R. Co.,* 832 F.2d 1427, 1435 (7th Cir.1987) ("The employer need not have 'good' reasons, and a mistaken business decision is not on that account a 'pretext'."). He must show that the explanation given is "a phony reason." If the plaintiff show that the reason given is *not true,* then he has shown pretext. (emphasis in original).

While there may be triable issues as to whether Acme Evans' decision to transfer Russell was just, fair, or sensible, it does not follow that triable issues of fact exist regarding whether Defendants' reasons are "phony." Russell can only point to his own assertions that the evaluations of his work performance were without foundation or based on "petty criticisms." He fails to show any specific evidence beyond his own testimony suggesting Defendants' evaluations of him or any other black or older workers have been slanted or unworthy of credence. Were this Court to allow Russell's claims to survive summary judgment solely based on his own evaluation of his work performance, it would be undertaking the forbidden role of a "super-personnel department that reexamines an entity's business decisions." *See Mechnig v. Sears Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988).

Moreover, Russell has not presented evidence besides his own affidavit suggesting that Acme Evans' alleged discriminatory intent based on race or age was the "but for" cause of his transfer. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1126 (7th Cir.1994); *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 923 (7th Cir.1988). Under the "but for" standard of causation:

[I]t is not enough for an employee to show that an employer harbored some discriminatory motivation. Rather, the employee must establish that the discriminatory motivation was a determining factor in the challenged employment decision in that the employee would have received the job absent the discriminatory motivation.

*McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659, 664 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988). The Court, therefore, finds that Russell's assertions are not enough to create a triable issue of fact regarding pretext or regarding whether race and age were "but for" factors for his transfer. Accordingly, we grant Defendants' motion for summary judgment as to his discrimination claims arising from Defendants' decision to transfer Russell.[6]

---

5. *See also Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1164 (7th Cir.1994), where the Seventh Circuit noted that merely attacking the fairness of the performance reviews is insufficient to prove age discrimination "unless age played a role in the evaluation."

6. *See also Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1134 (7th Cir.1994) (affirming summary judgment for employer in race discrimination case where plaintiff presented no evidence that "the explanation for her discharge [was] fantastic, unworthy of credence, or that it was more likely than not that [defendant] was motivated by

■ The Court next examines Russell's responses to Defendants' reasons for denying him the assistant miller position and applies the same analysis. Once again, we find that Russell's assertions that he was the most qualified for the position do not create genuine issues of material fact that the reasons proffered by Defendants are pretextual or that discriminatory reason more likely than not motivated Acme–Evans in its decision to deny Russell the assistant miller's position. *See Hughes v. Brown,* 20 F.3d 745, 747 n. 5 (7th Cir.1994); *Stone v. Galaxy Carpet Mills, Inc.,* 841 F.Supp. 1181, 1187 (N.D.Ga.1993). Russell's attempts to refute Defendants' proffered reasons suffer from an absence of specific material facts supporting his position.[7] Bald statements that Defendants' reasons have no factual basis do not attack the credibility of Acme–Evans' proffered reasons for termination, *see McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 372 (7th Cir.1992), or tend to prove that Russell has been the victim of *intentional* discrimination, *see Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). The Court finds that summary judgment in favor of Defendants is appropriate on the decision to deny him the assistant miller position.[8]

■ Finally, with regard to the overtime from the blowdown crew position, Russell fails to refute Defendants' reasons that over-

time decreased for Acme–Evans employees plant-wide in 1993 and that Russell has in fact worked more overtime than most employees at the facility. The Court finds no facts suggesting that Defendants' reason for denying overtime to Russell was pretextual and grants summary judgment in favor of Defendants regarding that decision as well.

## CONCLUSION

Because Russell has failed to present adequate evidence that the reasons given by Acme–Evans for transferring him to the skid wrapper position, not promoting him to assistant miller position, and denying him overtime from the blowdown position are pretextual, and because Russell fails to present evidence suggesting that he would meet his ultimate burden of proving intentional age and race discrimination, we grant summary judgment in favor of Defendants and against Plaintiff Russell.

It is so ORDERED.

## JUDGMENT

In accord with its entry of this date, the Court grants summary judgment in favor of Defendants Acme–Evans Company, ADM Milling Co., and Archer–Daniels–Midland Company and against Plaintiff John T. Rus-

---

racial discrimination rather than by its need to enforce company rules.")

**7.** A sample of his Brief in Opposition to Defendants' Motion for Summary Judgment provides a good example:

The after the fact offered reasons of 'lacked experience' and 'had not previously not (sic) any interest in learning the skills' are false and have no basis in fact. The defendants' implication that the young white man who did not apply for the job had more experience and showed more interest in the position is false and has no basis in fact. The offered reason that Russell's religion would have interfered with his ability to perform the job is, again, false and has no basis in fact as previously described in the discussion of the defendants' other issues. Thus, none of the reasons offered by the defendants for the denial of the assistant miller job are true or have a basis in fact. *See* Plaintiff's Brief in Opposition to Summary Judgment, at 49.

The above passage is typical of Russell's argument throughout his brief: his lengthy discourse does no more than merely deny that any of Defendants' proffered reasons are true without satisfying his obligation to allege concrete facts creating triable issues for a jury as to the reasons' falsity.

Before *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993), a plaintiff could meet his burden of proof merely by establishing that the non-discriminatory reasons proffered by the defendant were not credible. After *St. Mary's,* a plaintiff does not necessarily meet its burden by producing evidence that defendant's reason is pretextual. ("It is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.").

**8.** For a summary and analysis of what proof must be presented by plaintiff to avoid summary judgment under the *St. Mary's* standards in the varying circuits, *see Waldron v. SL Industries, Inc.,* 849 F.Supp. 996, 1004 n. 11 (D.N.J.1994).

sell. Each side is to bear its respective costs.

It is so ORDERED.